Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with some modifications.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. An index of medical records marked as stipulated 1 was received into evidence.
3. A set of Industrial Commission forms marked as stipulated 2 was received into evidence.
4. Plaintiff's recorded statement marked as stipulated 3 was received into evidence.
5. Plaintiff's first set of interrogatories marked as stipulated 4 was received into evidence.
6. A letter of recommendation marked as stipulated 5 was received into evidence.
***********
Based upon all of the competent evidence adduced from the record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-eight year old male high school graduate. Before his termination on 15 August 1996, plaintiff had been employed as an electrician maintenance technician with the defendant-employer for approximately one year.
2. Plaintiff testified that, on 14 August 1996, he was servicing an air compressor when he bumped his head on a pipe and was rubbing his head when the "lead man," Flynt Hamilton, walked by and jokingly questioned whether the plaintiff was sleeping.
3. On 15 August 1996, plaintiff and co-worker Nicholas Locklear, were performing their regular job duties servicing air conditioner units. On one particular occasion, both workers attempted to remove a fifty pound air-conditioning unit from a window. Plaintiff held the tilted side of the air conditioning unit while Mr. Locklear held the back of the unit. With the assistance of a third gentleman, plaintiff and Mr. Locklear were able to remove the unit and place it on a cart. Plaintiff felt a sharp pain in the groin area when he set the unit down.
4. Due to the pain in his groin area, plaintiff attempted to see the company nurse. Because the nurse was not in her office, plaintiff paged Albert Atkinson, who was in charge when the nurse was not available. Plaintiff reported the incident to Mr. Atkinson, supervisor of insulated glass and decorative windows. Mr. Atkinson stated that he suspected that plaintiff had sustained a hernia. Mr. Atkinson contacted Ron McSwain, the safety manager, who then directed plaintiff to see a company approved physician in Raeford, North Carolina. Plaintiff reported to the safety manager that he did not have transportation to Raeford, which was located thirty-two miles from the defendant-employer's business in Lumber Bridge, North Carolina. Plaintiff informed the safety manager that he wanted to schedule an appointment with his family physician, who was located in the immediate area. Mr. McSwain told the plaintiff not to do any heavy work the rest of the day.
5. Later that same day, Flynt Hamilton directed plaintiff to get in the cage of a forklift for crane inspection. Plaintiff attempted to explain to Mr. Hamilton about his injury. Mr. Hamilton expressed some anger. Sometime after lunch, plaintiff was called into the office of Mr. Greg Oxendine, the company manager. Mr. Oxendine notified plaintiff that he was terminated for sleeping on the job the previous day.
6. Plaintiff did not sleep on the job on 14 August 1996. The Deputy Commissioner made a finding that Mr. Oxendine's demeanor, and specifically his tone of voice, rendered his testimony not credible with respect to his claim that plaintiff admitted that he had been sleeping on the job. The Full Commission declines to reverse the Deputy Commissioner's credibility finding regarding this testimony. Furthermore, it is noted that Mr. Flynt is the employee who informed Mr. Oxendine of the sleeping incident, and, given the timing of the firing with the argument about the forklift duties, Mr. Flynt likely told Mr. Oxendine about his discussion with plaintiff regarding the injury. Thus, even if the Full Commission were persuaded to find that plaintiff had been caught sleeping or resting on the job, the whole of the evidence would thereupon indicate that the sleeping incident was used as a pretext for firing plaintiff, who, at the time of firing, had reported a work-related injury.
7. As a result of his work-related injury, plaintiff sought treatment at St. Paul Medical Clinic for pain in his right groin. Plaintiff was diagnosed with a right inguinal hernia, and referred to Dr. Samuel Britt.
8. Plaintiff first saw Dr. Britt on 19 September 1996, whereupon Dr. Britt confirmed the right inguinal hernia and scheduled plaintiff for hernia repair surgery on 24 September 1996. Plaintiff was restricted from returning to work until 25 November 1996. Dr. Britt testified at his deposition that lifting a heavy air conditioning unit was consistent with the development of plaintiff's right inguinal hernia.
9. On 22 April 1997, plaintiff returned to Dr. Britt, complaining of recurrent pain in his right groin and back pain. Plaintiff was restricted from work from 22 April 1997 until 12 May 1997, but the evidence is insufficient to show that the restriction was due to the groin pain.
10. Following his release to return to work on 25 November 1996, plaintiff made a reasonable and successful job search that resulted in obtaining a mechanic position. The record is devoid of any evidence of the date when plaintiff returned to work. On that unspecified date, plaintiff no longer sustained any diminution in his wage earning capacity.
11. As a result of his 15 August 1996 compensable injury by accident, plaintiff was unable to earn any wages from 15 August 1996 through the date he was hired as a mechanic by another employer.
12. The competent medical evidence in the record establishes that plaintiff's right inguinal hernia appeared suddenly on 15 August 1996 and resulted from a traumatic incident of the work assigned.
13. Plaintiff's testimony is rendered credible by his detailed explanation of events, particularly his discussions with Mr. Atkinson, Mr. McSwain, Mr. Hamilton, and the company nurse. For example, as the Deputy Commissioner noted, plaintiff's testimony regarding his discussion with Mr. McSwain about the length of the drive to see the employer-approved physician is a conversation that is likely to occur in a workers' compensation setting.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 15 August 1996, plaintiff sustained a hernia that appeared suddenly and immediately. This hernia arose out of and in the course of plaintiff's employment with the defendants and was a direct result of a specific traumatic incident of the work assigned. G.S. 97-2(18).
2. Plaintiff is entitled to total disability compensation in the amount of $240.00 per week for the period beginning 15 August 1996 to the date that he returned to work for another employer. G.S. 97-29.
3. Plaintiff is entitled to have defendants provide all medical treatment arising from plaintiff's right inguinal hernia to the extent that such treatment tends to effect a cure, give relief or lessen plaintiff's disability. G.S. 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay plaintiff temporary total disability compensation at the rate of $240.00 per week for the time period beginning 15 August 1996 to the date that plaintiff returned to work. This amount has accrued and shall be paid in a lump sum subject to the attorney's fee approved below.
2. A reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff under paragraph 1 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the compensation due plaintiff shall be deducted and paid directly to plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred by plaintiff for his right inguinal hernia.
4. Defendants shall pay the costs.
 S/_____________ RENEE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ DIANNE C. SELLERS COMMISSIONER